UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDERICK C. DOUGLAS, JR.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ALPHONSO R. JACKSON,<br>Secretary of Housing and Urban<br>Development,<br><br>　　　　　　Defendant. | Civil Action 04-00847 (HHK) |

MEMORANDUM OPINION

Frederick C. Douglas, Jr., brings this action against the Secretary of the United States Department of Housing and Urban Development ("Secretary" or "HUD"), in his official capacity, alleging that the Secretary discriminated against him on the basis of his race (Black), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, when his superior at HUD failed to nominate him for a Presidential Rank Award for Fiscal Year (FY) 2003. Before the court is the Secretary's's motion to dismiss, or in the alternative, for summary judgment. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted.

I.  BACKGROUND

A.      **The Presidential Rank Awards Program**

The Presidential Rank Awards Program recognizes senior executives for their exceptional achievement over a period of at least three years. *See* 5 U.S.C. § 4507; 5 C.F.R. § 451.301.

There are two types of Awards: (1) the Distinguished Rank Award, which is given for sustained extraordinary accomplishment and includes a lump-sum payment of 35 percent of base pay; and (2) the Meritorious Rank Award, which is given for sustained accomplishment and includes a lump-sum payment of 20 percent of base pay. *Id.* § 451.304. To be considered for an Award, an eligible employee must first be nominated by her respective agency. *Id.*[1] Within HUD, such nominations are solicited from departments heads and then reviewed by the Performance Review Board ("PRB"). According to HUD's criteria for selecting nominees, a candidate must "demonstrate extraordinary leadership, produce results and foster partnerships and community solutions." Def.'s Ex. 7 (HUD Award Criteria) at 1. Based on these criteria, the PRB determines which nominees should be recommended to the Secretary. The Secretary then decides which nominations to forward to the Office of Personnel Management ("OPM"). 5 C.F.R. § 451.305. OPM, in turn, determines which nominations to forward to the President. *Id.* Finally, the President decides which nominees shall receive the Awards. 5 U.S.C. § 4507.

**B.    Douglas's Complaint**

In January 1999, Douglas was appointed Deputy Assistant Secretary for Single Family Housing, an SES position at HUD. On or about December 11, 2003, he learned that Assistant Secretary for Housing John C. Weicher had not nominated him for a Presidential Rank Award

---

[1] The parties do not dispute that Douglas was eligible for an Award, which requires that a senior executive must: (1) hold a career appointment in the senior executive service ("SES") on the nomination deadline; (2) be an employee of the agency on the deadline; and (3) have at least three years of career or career-type federal civilian service at the SES level, although service need not be continuous. 5 C.F.R. § 451.301(b).

for FY 2003 when Weicher refused to meet with Douglas to discuss his nomination.[2]  Weicher had nominated Margaret Young, Deputy Assistant Secretary for Finance and Budget, who is White and who ultimately received an Award that year.

On January 27, 2003, Douglas filed an informal complaint with HUD's Equal Employment Opportunity ("EEO") counselor alleging that he was discriminated against on the basis of his race when Weicher refused to meet with him on or about December 11, 2002, to discuss the "possibility of a recommendation for the prestigious Presidential Rank Award."  Def.'s Ex. 1 (EEO Counselor's Report) at 1 ("EEO Report").  He also alleged that Weicher had been discriminating against him since June 2001 by failing to recommend him for three other monetary awards, some of which were awarded to White subordinates; by giving preferential assignments to White subordinates; and by undermining his authority in front of other subordinates.  As a remedy, Douglas sought compensation for the monetary awards he did not receive, including "[r]ecognition through monetary award in an amount equal to 35 percent of complainant['s] SES salary for loss of consideration to be recommended for a Presidential Rank Program Award and mental anguish the collective discrimination has caused ($48,440)."  *Id.* at 2.  He also sought assignment to another agency and attorney's fees.  HUD declined to resolve the complaint at the informal stage.

On February 27, 2003, Douglas filed a formal EEO complaint with HUD reiterating his allegation that Weicher "[r]efused to meet with complainant to discuss the possibility of a recommendation for the prestigious Presidential Rank Award."  Def.'s Ex. 2 (EEO Complaint)

---

[2]  Although the complaint indicates that Douglas learned of his non-selection on December 13, 2003, *see* Compl. ¶ 31, other documentation as well as his recent filings use the date December 11, 2003, *see* Def.'s Ex. 1 (EEO Counselor's Report) at 1; Pl.'s Opp'n at 5.

¶ 8.  After an investigation, HUD's EEO office issued a "final decision" on March 1, 2004, dismissing his complaint regarding the Award because he had failed to show that Weicher's failure to meet with him regarding the nomination had "caused him harm or that others not of his protected class were not so harmed."  Def.'s Ex. 1 (EEO Final Decision) at 6.[3]

## II. ANALYSIS

Before the court is the Secretary's motion to dismiss or, in the alternative, for summary judgment, on the grounds that Douglas (1) failed to timely exhaust all administrative remedies; or, in the alternative, (2) cannot prove that he suffered an adverse employment action.  Because the court agrees that Douglas cannot establish that he suffered an adverse employment action, the court grants summary judgment in favor of the Secretary.

**A.      Failure to Exhaust Administrative Remedies**

Before a federal employee may file a lawsuit under Title VII, she is required to exhaust any administrative remedies available to her through her agency's internal employment discrimination process.  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.310; *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832 (1976) (recognizing that right to sue under Title VII requires fulfillment of "certain preconditions" which includes "seek[ing] relief in the agency that has allegedly discriminated against [her]"); *see also Bayer v. U.S. Dep't of the Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992).  Exhaustion is required "in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when

---

[3] The EEO office also dismissed Douglas's other complaints because they had occurred more than 45 days prior to his informal complaint, and were thus barred by the applicable regulations. EEO Final Decision, at 6.

reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  "[A]dequacy of notice" to the agency of the claims of the complainant is at "the core of Title VII's administrative exhaustion requirements." *Id.*

The Secretary contends that Douglas did not exhaust his remedies because Douglas failed to raise his current claim during the administrative process.  As the Secretary sees it, Douglas's informal and formal complaints to the EEO office only mentioned Weicher's failure to *meet* with Douglas regarding the nomination, not his failure to *nominate* or *secure receipt* of the award, as his complaint contends.  The Secretary also contends that Douglas should have amended his complaint, or filed a new complaint, upon learning that Young had received the award.

A careful review of his complaints, however, reveals that the Secretary makes too fine a distinction.  In Douglas's informal complaint, he seeks a remedy of 35 percent of his salary for loss of consideration for the award, which is the lump-sum payment that he would have received if he had received the Distinguished Rank Award.  *See* EEO Report, at 2; 5 C.F.R. § 451.304. Douglas's formal EEO complaint states that Weicher requested the meeting "to discuss the reason(s) for not recommending the complainant."  EEO Complaint, ¶ 8.  Douglas asserted that Weicher "was the only official with authority and knowledge to recommend the complainant." *Id.*  Based on these complaints, the Secretary would clearly have had "adequacy of notice" of Douglas's complaint that he had not been nominated for, and therefore was not able, to receive the award.  *See Brown*, 777 F.2d at 14.  That someone else did go on to receive the award is irrelevant for exhaustion purposes, because the alleged harm took place when Douglas failed to receive a nomination.  Thus, the court concludes that Douglas exhausted the appropriate administrative remedies.

5

**B.      Adverse Employment Action**

Alternatively, the Secretary contends that Douglas did not suffer an adverse employment action and thus cannot establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).[4] The court agrees with the Secretary that, under the circumstances, Douglas did not suffer an adverse employment action and thus cannot meet his burden to prove a prima facie case.

To establish a prima facie case of disparate treatment discrimination, the plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). An "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). While adverse employment actions extend beyond readily quantifiable losses, "not everything that makes an employee unhappy is an actionable adverse

---

[4] Under *McDonnell Douglas*, the plaintiff bears the burden of making a prima facie case of discrimination by bringing forth facts sufficient "to create a reasonable inference" that the plaintiff's status as a member of a protected class, such as race, "was a factor in the employment decision at issue." *Krodel v. Young*, 748 F.2d 701, 705 (D.C. Cir. 1984). If the plaintiff successfully meets this burden, she creates a rebuttable presumption that the defendant employer unlawfully discriminated against her. *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004). The burden then passes to the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has done so, "the ultimate question . . . is whether intentional discrimination may be inferred from all of the evidence before the trier of fact." *Teneyck*, 365 F.3d at 1151.

action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (citations omitted). The employee must have "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). While economic harm is not a prerequisite, it is the typical injury flowing from an adverse employment action. *See Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 121 (D.D.C. 2005).

At issue here is whether Weicher's failure to nominate Douglas constitutes an adverse employment action. Weicher explained that he did not nominate Douglas because, in his judgment, Douglas's performance was not "exceptional" as defined by HUD's criteria. *See* Def.'s Ex. 5 (Weicher Dep.) at 72:13–19. As such, Weicher's decision not to nominate Douglas was analogous to a performance rating. Generally speaking, a single performance rating without something more is not actionable under Title VII. *See Brodetski v. Duffey*, 141 F. Supp. 2d 35, 47 (D.D.C. 2001) ("Criticism of an employee's performance unaccompanied by a change in position or status does not constitute adverse employment action."). Such decisions are often interlocutory and their damage is speculative — "a single poor evaluation may drastically limit an employee's chances for advancement, or it may be outweighed by later evaluations and be of no real consequence." *Russell*, 257 F.3d at 818. A performance rating that results in a denial of an automatic monetary benefit, however, may constitute an adverse employment action. *See id.* In *Russell*, a Black employee had alleged that she was discriminated against because her performance rating was lower than that of a White co-worker and the size of her bonus "was directly tied to her performance rating; a higher rating would have automatically meant a larger

bonus." *Id.* at 819. The court recognized that in some instances, a performance evaluation resulting in a denial of a bonus could constitute "objectively tangible harm" and could thus be an adverse employment action under Title VII. *Id*. (internal quotation marks and citation omitted). The court made clear, however, that such a performance evaluation would have to *automatically* result in the denial of a bonus in order to constitute an adverse employment action. The court cited with approval *Rabinovitz v. Pena*, in which the Seventh Circuit concluded that a performance rating that resulted in "the loss of a bonus is not an adverse employment action . . . where the employee is not automatically entitled to the bonus." 89 F.3d 482, 488–89 (7th Cir. 1996). The D.C. Circuit explained that Rabinovitz's bonus was "discretionary" — and therefore, not actionable — whereas Russell's bonus would have been automatic if she had received the higher performance rating, and thus it was actionable if her poor rating was caused by discrimination. *Russell*, 257 F.3d at 819.

Because Douglas's failure to be nominated for the Award is analogous to a negative performance rating, it could only constitute an adverse employment action if it would have automatically resulted in his receipt of an Award (and the monetary bonus along with it). Douglas contends that the evidence in the record supports the inference that he would have certainly received an Award had he been nominated for it. For example, he notes that Young was nominated by Weicher and subsequently received an Award. What he fails to acknowledge, however, is that the evidence convincingly demonstrates that nomination by one's supervisor is by no means a guarantee that one will receive an Award. Each person nominated by a HUD department head requires approval at four more levels to obtain an Award: (1) the Performance Review Board; (2) the Secretary; (3) OPM; and (4) the President. And these levels are not mere

rubber stamps. As shown in the following chart based on evidence produced by HUD, of the thirty-two candidates nominated by their department heads in 1999–2004, only sixteen ultimately received an Award:

| Fiscal Year (FY) | Department Heads | Performance Review Board | The Secretary | Selections by President for Awards |
|---|---|---|---|---|
| FY 1999 | Davis, Herold, Kenison, Hutchinson, Weidenfeller, Smith, Thompson, Gibbons | Smith, Kenison, Davis | Smith (B), Kenison (W), Gibbons (W), Davis (B) | Smith, Davis, Gibbons |
| FY 2000 | Anderson, Kennedy, Parker, Hutchinson, Kenison | Anderson, Kennedy, Parker, Hutchinson, Kenison | Anderson (B), Kennedy (W), Parker (B), Hutchinson (B), Kenison (W) | Anderson, Parker, Hutchinson, Kenison |
| FY 2001 | Bateman, Douglas, Kennedy, Burkhalter | Bateman, Douglas, Burkhalter | None | None |
| FY 2002 | Kennedy, Abbenante | Kennedy, Weidenfeller[5] | Kennedy (W), Weidenfeller (W) | Kennedy, Weidenfeller |
| FY 2003 | Bregon, Herold, May, Young, Eargle, Phelps | May, Bregon, Phelps, Young | May (B), Bregon (H), Phelps (W), Young (W) | May, Bregon, Phelps, Young |
| FY 2004 | Davis, Eargle, Blunt, Greene, Herold, Stephens, Owens | Davis, Blunt, Herold, Owens, Stephens | Davis (B), Blunt (B), Herold (W), Stephens (W) | Blunt, Herold, Stephens |

---

[5] In FY 2002, the PRB disapproved the recommendation of one candidate and another was apparently substituted by the Secretary. *See* Pl.'s Ex. W (Def.'s Response to Interrogatories) at 5.

Pl.'s Ex. W (Def.'s Response to Interrogatories) at 2–8.[6]  Indeed, in FY 2001, Douglas himself was nominated by his department head but did not ultimately receive an Award.  Thus, the evidence belies Douglas's contention that a nomination by his department head would have directly resulted in his receipt of an Award.[7]

Douglas bases much of his Opposition on setting forth his own qualifications and debunking the merits of Young's nomination, but to little avail.  As Douglas himself correctly points out, a comparison of their qualifications is irrelevant, given that Weicher could have nominated more than one candidate from his department, and more than one nominee from an agency department may ultimately receive an Award.  *See* Pl.'s Ex. W (Def.'s Response to Interrogatories) at 3–5 (two nominees from the HUD General Counsel's office received the award in FY 2000 and FY 2002).  The fact that Young was nominated in no way affected Douglas's non-selection.  Moreover, the fact that "other individuals may have received favorable treatment plaintiff does not believe they deserved simply is not an adverse employment action with respect to plaintiff."  *Nichols v. Truscott*, 424 F. Supp. 2d 124, 138 (D.D.C. 2006).

---

[6] The selections made by OPM are not reflected in this chart as it based on information supplied by HUD on its internal process, and it did not produce information relating to OPM's decisions.

[7] Douglas counters this evidence by citing inapposite case law regarding whether the discriminatory actions of subordinates may be used to prove the discriminatory intent of superiors.  Douglas cites to *Griffin v. Wash. Convention Ctr.*, which held that "evidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence." 142 F.3d 1308, 1312 (D.C. Cir. 1998).  That holding, however, did not concern whether such an action constituted an adverse employment action — Griffin had been terminated, which is indusputably an adverse employment action.

In these circumstances, Douglas cannot establish that he suffered an adverse employment action, and thus cannot satisfy his burden to demonstrate a prima facie case of discrimination. Accordingly, summary judgment shall be entered in favor of the defendant.[8]

### III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [#52] is granted. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

Dated: March 22, 2007

---

[8] Because Douglas did not suffer an adverse employment action, the court need not reach the defendant's alternative arguments for summary judgment. *Rabinovitz v. Pena*, 89 F.3d at 489.